# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1167

_____

1-800-411-Pain Referral Service, LLC; Truman Injury PLLC; Sergio Triana, D.C.

*Plaintiffs - Appellants*

v.

Leroy Otto, D.C.; Ralph Stouffer; Matthew Anderson, D.C.; Howard Fidler, D.C.; Robert Daschner, D.C.; Gregory Steele; Teresa Marshall, D.C.; Minnesota Board of Chiropractic Examiners, in their official capacities[1]

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 20, 2013
Filed: March 10, 2014

_____

Before RILEY, Chief Judge, MELLOY and KELLY, Circuit Judges.

_____

---

[1]After the case was submitted, two of the original defendants, Richard Tollefson, D.C., and Kay Strobel, had their terms expire as members of the Minnesota Board of Chiropractic Examiners. Pursuant to Fed. R. App. P. 43(c)(2), their successors to the Board, Leroy Otto, D.C., and Gregory Steele, have been automatically substituted as new defendants.

MELLOY, Circuit Judge.

Plaintiffs are 1-800-411-Pain Referral Service, LLC ("411-Pain"), a medical and legal referral business for car accident victims; Sergio Triana, D.C., a chiropractor; and Truman Injury PLLC, Mr. Triana's practice entity. Together they filed a 42 U.S.C. § 1983 complaint, alleging that recent amendments to Minnesota's No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41–71, violate the First Amendment. They also filed a motion for a preliminary injunction based on the allegations in their § 1983 suit, seeking to enjoin Defendants, members of the Minnesota Board of Chiropractic Examiners, from enforcing the new provisions. The district court[2] denied the motion, and Plaintiffs appeal. Having jurisdiction under 28 U.S.C. § 1292(a)(1), we affirm.

## I. Background

### A. The Parties

411-Pain is incorporated in Florida and promotes itself in several states using such media as billboards, radio, television, print, and the internet. When people call 411-Pain, they are connected to an operator who refers them to health care providers or attorneys[3] located in a particular caller's geographic area. 411-Pain says that its "extensive—and very costly—advertising" benefits providers in its referral network who might not otherwise choose to advertise on their own. Plaintiffs Sergio Triana, D.C., and Truman Injury PLLC are members of 411-Pain's referral network in Minnesota.

---

[2]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

[3]We note that the challenged statute in this case affects only licensed health care providers (i.e., not attorneys) and those who advertise at a provider's direction.

Defendants are the members of the Minnesota Board of Chiropractors (the "Board"). Plaintiffs allege that Defendants, in their official capacity, have authority under Minnesota's No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41–71 (the "No-Fault Act" or "Act"), to discipline providers such as Mr. Triana. See, e.g., Minn. Stat. § 65B.54, Subdiv. 6(e) ("A violation of this subdivision is grounds for the licensing authority [i.e., the Board] to take disciplinary action against the licensee, including revocation in appropriate cases."). Plaintiffs aver that Defendants' enforcement authority under the Act will cause health care providers such as Mr. Triana to refuse to do business with 411-Pain out of fear of discipline, thereby chilling Plaintiffs' commercial speech rights and causing economic harm.

B. Minnesota's No-Fault Act Amendments and Their Impact on 411-Pain

This matter concerns 411-Pain's radio and television advertisements that reference potential benefits available under the No-Fault Act. The Act requires insurers to provide basic economic loss benefits to their insureds, regardless of fault. Specifically, the Act mandates coverage of up to $20,000 for medical expense loss and up to $20,000 for lost income, replacement service loss, funeral loss, survivor's economic loss, and survivor's replacement services loss. Minn. Stat. § 65B.44, Subdiv. 1.

To curtail potentially unethical practices by "licensed health care provider[s]," the Act also includes restrictions on the solicitation and advertisement of medical services to car accident victims. See generally Minn. Stat. § 65B.54, Subdiv. 6. For example, providers must not initiate direct contact with a victim of an automobile accident "for the purpose of influencing that person to receive treatment or to purchase any good or item" from such providers. Id. at Subdiv. 6(a). Providers may still advertise their services eligible for insurance coverage by the Act in various public media, but only if the advertisements comply with Minn. Stat. § 65B.54, Subdiv. 6(d)

("Subdivision 6(d)"). The Minnesota Legislature added Subdivision 6(d) in 2012. This new subdivision creates several rules for providers who wish to advertise under the Act. It reads in relevant part as follows:

> In addition to any laws governing, or rules adopted by, a health care provider licensing board, any solicitation or advertisement for medical treatment, or for referral for medical treatment, of an injury eligible for treatment under [the No-Fault Act] must:
>
> 1. be undertaken only by or at the direction of a health care provider;
> 2. prominently display or reference the legal name of the health care provider;
> 3. display or reference the license type of the health care provider, or in the case of a health care provider that is a business entity, the license type of all of the owners of the health care provider but need not include the names of the owners;
> 4. not contain any false, deceptive, or misleading information, or misrepresent the services to be provided;
> 5. not include any reference to the dollar amounts of the potential benefits under [the No-Fault Act]; and
> 6. not imply endorsement by any law enforcement personnel or agency.

Plaintiffs allege that Subdivision 6(d) proscribes several aspects of 411-Pain's current advertising in Minnesota, in the process violating Plaintiffs' commercial speech rights. For example, 411-Pain's radio ads, among other things, tell car accident victims to call the company immediately after an accident and inform accident victims that they "may be entitled to up to forty thousand dollars in injury and lost wage benefits."[4] Plaintiffs claim that 411-Pain's reference to dollar amounts of potential

---

[4]Transcripts of the radio advertisements at issue are appended to this opinion in the typeface form in which Plaintiffs submitted them to the district court.

benefits available under the Act violates Subdivision 6(d)(5). Also, the advertisements do not disclose the legal names or license types of the health care providers in 411-Pain's referral network, which Plaintiffs allege violates Subdivisions 6(d)(2) and (3).

Further, television advertisements described in an affidavit submitted by 411-Pain's owner, Robert Lewin, "feature a vehicle crash and then an actor appearing as a police officer or EMT with an ambulance conveying to viewers that if they call the phone number associated with 800-411-PAIN or go to 411Pain.com, then they can get help after being injured in an accident." Mr. Lewin attests that these TV spots "contain a conspicuous and prominent disclaimer stating that the person appearing in the advertisement is a 'PAID ACTOR.'"[5] Plaintiffs allege that 411-Pain's TV advertisements, despite the disclaimer as described by Mr. Lewin, violate Subdivision 6(d)(6).[6]

C. District Court Proceedings

Subdivision 6(d) and other amendments to the Act were scheduled to take effect on January 1, 2013. 1-800-411-Pain Referral Service, LLC v. Tollefson, 915 F. Supp. 2d 1032, 1036 (D. Minn. 2012). Plaintiffs filed the instant motion for a preliminary injunction, see Fed. R. Civ. P. 65, in federal district court on December 5, 2012. They sought to enjoin Defendants from enforcing Subdivisions 6(d)(1), (2), (3), (5), and

---

[5]For reasons not fully explained, the TV ads depicting either a police officer or an EMT were not submitted into evidence. As such, Mr. Lewin's description of the advertisements is the only evidence of their content before the court.

[6]411-Pain also claimed that its current business model violates Subdivision 6(d)(1) because the company does not operate "at the direction of" any particular health care provider. We discuss 411-Pain's proposed construction of Subdivision 6(d)(1) in Part II.C.iii.

(6).[7] In their underlying § 1983 complaint filed against Defendants in Defendants' official capacity, Plaintiffs argued that Subdivision 6(d) violates their First Amendment rights in several ways. First, Plaintiffs claimed Subdivision 6(d)(1) creates an unconstitutional "blanket ban" on 411-Pain's commercial speech because the company does not operate at "the direction of" any one health care provider. Second, Plaintiffs claimed that Subdivisions 6(d)(2) and (3), the disclosure requirements, are unconstitutional because the requirements are so unjustified and unduly burdensome that they create a de facto ban on 411-Pain's ability to advertise in Minnesota. Third, Plaintiffs alleged that Subdivision 6(d)(5), which prohibits any reference in advertisements to dollar amounts potentially recoverable under the Act, creates an unconstitutional content-and-speaker-based restriction on 411-Pain's commercial speech. Finally, Plaintiffs argued that Subdivision 6(d)(6), which forbids advertising under the Act that "impl[ies] endorsement by any law enforcement personnel or agency," is either unconstitutionally vague or else unconstitutionally restricts Plaintiffs' commercial speech.

The district court denied Plaintiffs' motion, concluding they were not "likely to prevail on the merits" on any of their claims under this circuit's heightened preliminary injunction standard for enjoining validly enacted statutes. See Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc) ("Planned Parenthood"). The court found that while Subdivisions 6(d)(1), (5), and (6) constituted content-and-speaker-based restrictions on speech, Sorrell v. IMS Health Inc., 131 S. Ct. 2653, 2672 (2011), 411-Pain's advertisements were "inherently misleading" and thus not entitled to First Amendment protection under Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y., 447 U.S. 557, 563–64 (1980).

---

[7]Plaintiffs did not seek to enjoin enforcement of Subdivision 6(d)(4), which prohibits advertisements implicating the No-Fault Act that "contain any false, deceptive, or misleading information, or misrepresent the services to be provided."

-6-

The district court concluded that 411-Pain's advertisements were "inherently misleading" for several reasons. For one, the ads failed to inform accident victims of the nature of 411-Pain's business—namely, that it is a medical and legal referral service. Further, the court found that the statement "up to $40,000 in benefits" in the radio ads was inherently misleading because accident victims may receive nothing, or may receive benefits far in excess of $40,000 from many different sources in addition to the mandatory insurance coverage required by the No-Fault Act.

With respect to the use of law enforcement personnel in 411-Pain's TV advertisements, the district court concluded that the ads "extend a misleading aura of authorized approval" to the company. The court rejected Plaintiffs' assertion that a "PAID ACTOR" disclaimer, which Mr. Lewin described as "conspicuous and prominent" in the TV spots, was sufficient to signal non-endorsement by law enforcement. The district court also found that Subdivision 6(d)(1), which prohibits advertising under the Act unless such advertising is done "by or at the direction of a health care provider," was a "valid prohibition on speech concerning unlawful activity." The implicated speech was unlawful (or at least potentially unlawful) because if the advertising was not done at the direction of licensed health care providers, then 411-Pain's business relationships with chiropractors may implicate anti-kickback statutes. The district court concluded in the alternative that 411-Pain, by its very nature as a referral business, advertises "at the direction of" its providers; and further, that if 411-Pain was concerned about complying with Subdivision 6(d)(1), the company could add language to its business contracts clarifying that it acts "at the direction of" providers in its network.

The district court assessed the disclosure requirements of Subdivisions 6(d)(2) and (3) under the commercial speech disclosure standard developed in <u>Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio</u>, 471 U.S. 626 (1985). Under <u>Zauderer</u>, disclosure requirements for commercial speech are constitutional so

long as they are "reasonably related to the State's interest in preventing deception of consumers" and are not so "unjustified or unduly burdensome" that they "chill[] protected commercial speech." Id. at 651. The court concluded that Subdivisions 6(d)(2) and (3) satisfied Zauderer because, among other things, 411-Pain did not introduce evidence showing how the requirements were unduly burdensome when applied to the company's ads. Alternatively, the court found that the disclosure requirements satisfied Sorrell and Central Hudson because the disclosures were narrowly drawn and directly advanced a substantial state interest by informing accident victims of the nature of expertise of the providers in 411-Pain's health care network.

In sum, the court refused to enjoin enforcement of any portion of Subdivision 6(d). The provisions went into effect on January 1, 2013, and have been in place since. Plaintiffs renew their challenges to Subdivision 6(d) here. The parties agreed to stay further proceedings in the district court pending the outcome of this interlocutory appeal.

## II. Discussion

### A. Standard of Review to Enjoin a Validly Enacted Statute

This court reviews a district court's order denying a preliminary injunction for abuse of discretion. Planned Parenthood, 530 F.3d at 733. An abuse of discretion in the preliminary injunction context occurs when a district court's judgment is based on "clearly erroneous factual findings or erroneous legal conclusions." Id. Because Plaintiffs seek to enjoin enforcement of a validly enacted statute, they must establish as a threshold matter that they are "likely to prevail on the merits." Id. at 732. The "likely to prevail on the merits" standard requires a more rigorous threshold showing than this circuit's ordinary preliminary injunction test, which asks only whether a

movant has demonstrated a "fair chance of prevailing" in the ultimate litigation and which does not require a strict probabilistic determination of the chances of a movant's success when other factors, for example irreparable harm, carry substantial weight. See id. at 730–31 (discussing the traditional test under Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 112–14 (8th Cir. 1981) (en banc)). The elevated standard for enjoining enforcement of validly enacted statutes is designed "to ensure that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an *appropriately deferential analysis.*" Planned Parenthood, 530 F.3d at 733 (emphasis added).

If Plaintiffs satisfy the "likely to prevail on the merits" standard, they must next prove a threat of irreparable harm that outweighs the potential injury to other litigants from granting the injunction. Dataphase, 640 F.2d at 114. The court must also consider the effect an injunction would have on the public interest. Id.

B. Standard of Review to Apply to Commercial Speech

The First Amendment declares in part that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend I. "The amendment applies to state and local governments through the Fourteenth Amendment." Passions Video, Inc. v. Nixon, 458 F.3d 837, 840 (8th Cir. 2006). The parties agree that the speech at issue in this case is commercial speech. The Constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." Cent. Hudson, 447 U.S. at 563; Sorrell, 131 S. Ct. at 2672 ("Indeed the government's legitimate interest in protecting consumers from 'commercial harms' explains 'why commercial speech can be subject to greater governmental regulation than noncommercial speech.'" (quoting City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 426 (1993))). However, commercial speech is still protected "from unwarranted governmental regulation." Cent. Hudson, 447 U.S. at 561.

In Sorrell, the Supreme Court reviewed Vermont statutes restricting pharmaceutical companies and similar entities from using prescriber-identifying information obtained from pharmacists for marketing purposes. 131 S. Ct. at 2661–62. The Supreme Court held that the laws unconstitutionally restricted the commercial speech rights of pharmaceutical manufacturers and their agents. Id. at 2672. In the process, the Court devised a new two-part test for assessing restrictions on commercial speech. See United States v. Caronia, 703 F.3d 149, 163 (2d Cir. 2012) (describing Sorrell's commercial speech standard as a "two-step inquiry"). The first question to ask is whether the challenged speech restriction is content- or speaker-based, or both. Sorrell, 131 S. Ct. at 2663. While this inquiry is "not always a simple task," Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643 (1994), "[a]s a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based," id.; Sorrell, 131 S. Ct. at 2663 (identifying Vermont's law as speaker-based because it "disfavors specific speakers").

If a commercial speech restriction is content- or speaker-based, then it is subject to "heightened scrutiny." Sorrell, 131 S. Ct. at 2664. Sorrell, however, did not define what "heightened scrutiny" means. Instead, after concluding that the restrictions in the case were both content- and speaker-based, the Court proceeded to analyze them under the Central Hudson factors, noting the outcome would have been "the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." Sorrell, 131 S. Ct. at 2667.

The upshot is that when a court determines commercial speech restrictions are content- or speaker-based, it should then assess their constitutionality under Central Hudson. See Caronia, 703 F.3d at 164. The well-known Central Hudson inquiry, in turn, employs a four-part standard to test the constitutionality of laws burdening commercial speech: (1) whether the commercial speech at issue concerns unlawful

activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest. Cent. Hudson, 447 U.S. at 566.[8]

With the commercial speech legal landscape in mind, we proceed as follows. First, we assess Subdivisions 6(d)(5) and (6) as applied to 411-Pain's advertisements. Next, we consider Plaintiffs' challenge to Subdivision 6(d)(1), and specifically whether its requirement that advertisers operate "at the direction of" health care providers violates Plaintiffs' commercial speech rights. Finally, we evaluate the disclosure requirements in Subdivisions 6(d)(2) and (3).

C. Applying Sorrell and Central Hudson to Subdivisions 6(d)(5), (6), and (1)

i. Subdivision 6(d)(5)

Plaintiffs allege that Subdivision 6(d)(5) is unconstitutional as applied[9] to 411-Pain's radio ads.[10] The provision proscribes advertisements that contain "any reference to the dollar amounts of the potential benefits under [the No-Fault Act]."

---

[8]We discuss whether Central Hudson or a different type of commercial speech standard of review applies to the disclosure requirements of Subdivisions 6(d)(2) and (3) in Part II.D.ii.

[9]Plaintiffs' complaint does not specify which of their constitutional challenges to Subdivision 6(d) are facial or as-applied. At oral argument, Plaintiffs' counsel represented that their challenges to Subdivisions 6(d)(5) and (6) were applied challenges to their advertisements. We credit counsel's representation for the purposes of this analysis.

[10]Plaintiffs do not say one way or another whether the TV ads also contain references to potential benefits available under the Act.

-11-

This rule implicates 411-Pain's radio ads, which encourage car accident victims to call the company and state that victims may recover "up to $40,000 in injury and lost wage benefits." Defendants maintain that Plaintiffs' reference to dollar amounts of insurance benefits potentially recoverable under the Act is "inherently misleading" and may therefore be regulated freely.

Under Sorrell, we first conclude that Subdivision 6(d)(5) is a content-and-speaker-based restriction on commercial speech. 131 S. Ct. at 2663. The provision disfavors "speech with a particular content," id., namely, speech that references insurance benefits available under Minnesota's No-Fault Act. In addition, the restriction is speaker-based because it disfavors certain speakers, namely "licensed health care providers" and the persons, agents, and entities such providers may direct under the Act. Thus, Sorrell's first inquiry is satisfied, so we turn to Central Hudson's test for assessing the constitutionality of Subdivision 6(d)(5) as applied to 411-Pain's ads.

Under Central Hudson, the threshold inquiry for assessing commercial speech restrictions is whether the speech at issue is misleading or concerns unlawful activity. 447 U.S. at 566. "Inherently misleading" speech is speech that "inevitably will be misleading" to consumers. Bates v. State Bar of Ariz., 433 U.S. 350, 372 (1977). The "inherently misleading" character of speech may be inferred from the "particular content or method of the advertising" as well as from "experience [that] has proved that in fact such advertising is subject to abuse." In re R.M.J., 455 U.S. 191, 203 (1982). "Misleading advertising may be prohibited entirely." Id. Whether speech is "inherently misleading" is a question of law that we review *de novo*. See Peel v. Att'y Reg. & Disciplinary Comm'n of Ill., 496 U.S. 91, 108 (1990) (plurality opinion) ("Whether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law over which Members of this Court should exercise *de novo* review.").

We agree with the district court's conclusion that the reference in 411-Pain's radio ads to a possible entitlement of "up to $40,000 in injury and lost wage benefits" inherently misleads consumers, because it

> impl[ies] that consumers will receive a floor of benefits, potentially up to $40,000, when, in fact, many consumers will receive nothing. Conversely, these representations also imply that $40,000 represents the ceiling of possible benefits, when, in fact, a variety of other possible benefits may be available to automobile accident victims—collision coverage, liability coverage, uninsured motorist coverage, and possibly stacked coverage for motorists not at fault, who have stacked policies. While an attorney or insurance agent qualified to advise clients about coverage could convey this information, 411-Pain's advertisements of "up to" $40,000 in economic loss benefits misleadingly limit the universe of information. Just as 411-Pain's advertisements may prompt some consumers to unnecessarily seek benefits, the proscribed advertising may also keep some consumers from obtaining *more* benefits.

1-800-411-Pain, 915 F. Supp. 2d at 1051–52. Further, we conclude that the references to the dollar amounts are "inherently misleading" by omission: they fail to explain that, through 411-Pain's health referral aspect of its business, an accident victim will not receive $40,000, or *any* amount of money, as a simple cash transfer. The ads do list the dollar amount in terms of "benefits," but the effect of the invocation of money without reference to the Act or a description of the way the benefits are obtained misleadingly implies that 411-Pain will acquire cash and pass along a portion of it to the car accident victim. 411-Pain is simply a referral service, and the potential health care benefits will be paid to providers in the network in the form of insurance reimbursements for actual and necessary services rendered. By selectively omitting important pieces of information from its radio ads, 411-Pain's speech is thus "inherently misleading" due to its failure to provide meaningful context as to the origin and source of potential benefits available under the No-Fault Act.

Robert Lewin, owner and founder of 411-Pain, submitted an affidavit on behalf of Plaintiffs to the district court. He avers that his company's ads, among other things, "inform consumers that they may be entitled to up to $40,000 in *no-fault insurance benefits* following an accident." (Emphasis added). Similarly, Plaintiffs' brief argues that "it is fallacious to conclude (without evidence of confusion) that an ad *accurately* stating the benefits that *may* be available *under the No-Fault Act* would *inevitably* mislead consumers." (Emphasis added). These representations suggest that the ads do in fact explain the funding source of the $40,000 in benefits. No ad in the record, however, reveals that the source of the possible entitlement is the No-Fault Act's mandatory insurance requirements for car accident victims. We do not credit Plaintiffs' assertions when they are inconsistent with the substance of what the ads submitted to the district court actually say. Cf. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) (noting that generally a court will not credit an affidavit when the affidavit contradicts earlier sworn testimony).

In sum, we are persuaded that, at least in the context of this appeal from a denial of a preliminary injunction, the "inherently misleading" standard is broad enough in application to encompass 411-Pain's references to the $40,000 in potential insurance benefits. As such, we affirm the district court's denial of Plaintiffs' request for a preliminary injunction barring enforcement of the provision.

ii. Subdivision 6(d)(6)

Plaintiffs allege that Subdivision 6(d)(6) is unconstitutional when applied to 411-Pain's television ads.[11] Subdivision 6(d)(6) says that any advertisement under the

_____

[11]In Plaintiffs' complaint, they challenged Subdivision 6(d)(6) on vagueness grounds as well. However, the district court did not decide the vagueness issue, and Plaintiffs do not develop the argument in their briefs. We deem the argument waived. See Cubillos v. Holder, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009). Moreover, even if we did consider the vagueness argument on the merits, it fails because a "plaintiff who

-14-

Act must "not imply endorsement by any law enforcement personnel or agency." Plaintiffs claim that such a ban is an unconstitutional content-based restriction on 411-Pain's commercial speech. We agree with Plaintiffs that Subdivision 6(d)(6) imposes a content-based restriction, as it disfavors "speech with a particular content," Sorrell, 131 S. Ct. at 2663. In this case, it prohibits the use of implied endorsement by law enforcement in advertisements that implicate the No-Fault Act. However, we disagree that Subdivision 6(d)(6) is unconstitutional as applied to 411-Pain's use of a police officer in the company's TV ads. Rather, the implied endorsement of 411-Pain by law enforcement is "inherently misleading" and therefore such depictions may be "prohibited entirely." In re R.M.J., 455 U.S. at 203.

In this regard, "we note that our ability to evaluate [Subdivision 6(d)(6)'s] validity as applied to [411-Pain's TV ads] is constrained by the lack of a developed record." Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 249 n.7 (2010). See also id. (noting that in the context of a First Amendment pre-enforcement challenge with a dearth of record evidence, the Court would be "guided" in its analysis by the nature of the plaintiff's "status" and by "its general claims about the nature of its advertisements"). Plaintiffs chose not to submit their video advertisements for review before the district court. Instead, they relied solely on Mr. Lewin's characterization of the TV ads in his affidavit. He attests that the ads "feature a vehicle crash and then an actor appearing as a police officer or EMT with an ambulance conveying to viewers that if they call the phone number associated with 800-411-PAIN or go to 411Pain.com, then they can get help after being injured in an

---

engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2719 (2010) (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)). The statute clearly prohibits 411-Pain's use of fictitious police officers impliedly endorsing the company, and thus 411-Pain cannot challenge the statute as it may be applied to others.

accident." Mr. Lewin claims that these ads "contain a conspicuous and prominent disclaimer stating that the person appearing in the advertisement is a 'PAID ACTOR.'"

Recognizing our limited ability to review Plaintiffs' challenge to Subdivision 6(d)(6) without the actual ads before us, we nonetheless hold that Plaintiffs are not "likely to succeed on the merits" in the ultimate litigation because the ads as described are "inherently misleading." Here, we agree with the district court that 411-Pain's use of actors posing as persons of authority to sell its business "extend[s] a misleading aura of authorized approval to the services in question." 1-800-411-Pain, 915 F. Supp. 2d at 1054. In fact, no such official approval exists. Second, Mr. Lewin's statement that the disclaimer "PAID ACTOR" is "conspicuous and prominent" in the ads, standing alone, is hopelessly subjective: a disclaimer's "conspicuousness" and "prominence" are, inevitably, in the eyes of its beholder. More fundamentally, though, the words "PAID ACTOR," no matter how large, even if they disclaim a specific *actor*'s allegiance to 411-Pain, do not disclaim implied endorsement by the type of official the actor portrays. The net effect of the ad, as described by Mr. Lewin, in its overall context, cloaks 411-Pain with a "misleading aura of authorized approval to the services in question," an approval the company has no right to convey in its advertisements.

Plaintiffs compare the portrayal of law enforcement or EMT personnel in 411-Pain's ads to cases that approved of attorney ads depicting judges, see Alexander v. Cahill, 598 F.3d 79 (2d Cir. 2010), and Public Citizen Inc. v. Louisiana Attorney Disciplinary Board, 632 F.3d 212 (5th Cir. 2011). Plaintiffs' analogy is flawed and not persuasive. In Alexander, an attorney advertising rule prohibited "the portrayal of a judge" generally in ads for legal services. 598 F.3d at 92. The specific advertisement in the case "depict[ed] a judge in the courtroom and state[d] that the judge is there 'to make sure [the trial] is fair.'" Id. at 93 (third alteration in original). The Second Circuit held that the rule violated the First Amendment's commercial speech doctrine when applied to the attorney's advertisements. Id. at 92–93. The

-16-

court reasoned that this specific type of portrayal of a judge "does not imply an ability to influence a court improperly." Alexander, 598 F.3d at 93; see also Public Citizen, 632 F.3d at 218–19 (reasoning that a "portrayal of a judge" in an advertisement was not "inherently misleading" because depicting "a judge in an advertisement may also be presented in a way that is not deceptive").

Both the rules and challenged ads in Alexander and Public Citizen are too dissimilar to the current case to provide Plaintiffs much analytical help. Unlike in Alexander or Public Citizen, where the attorney advertising rules categorically prohibited *any* portrayal of a judge—here the Minnesota statute, by its terms, prohibits only *implied endorsement* of law enforcement. The statute does not ban the depiction of law enforcement all together. Further, the specific ad in Alexander only showed a judge performing normal functions in court, unlike 411-Pain's use of an officer or EMT who speaks directly to the audience and tells viewers to call 411-Pain immediately after a car accident. The actor-officer's support for 411-Pain imbues the company with a faux-sense of official legitimacy that "inherently mislead[s]" viewers. In re R.M.J., 455 U.S. at 203. Concluding that Plaintiffs are not "likely to prevail on the merits," Planned Parenthood, 530 F.3d at 732, we affirm the district court's denial of Plaintiffs' request for a preliminary injunction barring enforcement of Subdivision 6(d)(6).

iii.  Subdivision 6(d)(1)

Subdivision 6(d)(1) mandates that any advertising for medical treatment eligible for coverage under the No-Fault Act "be undertaken only by or at the direction of a health care provider." Plaintiffs claim the statute is unconstitutional because it prohibits 411-Pain from advertising its car-accident-assistance services at all, as the company does not advertise "at the direction" of any particular health care provider. Applying Sorrell, we first conclude that the restriction is speaker-based because it only applies to speakers who solicit—without direction from a health care

provider—car accident victims for medical treatment. 131 S. Ct. at 2663. Further, the restriction is also speaker-based because it only applies to entities and providers who advertise their services in the context of automobile accidents—as opposed to, for example, personal injury or workers' compensation cases.

Nevertheless, we conclude that Plaintiffs cannot show they are "likely to prevail on the merits" in their challenge to Subdivision 6(d)(1). Planned Parenthood, 530 F.3d at 732. Subdivision 6(d)(1) constitutes a valid restriction on commercial speech because it targets potentially unlawful activity—specifically, violations of anti-kickback statutes. See, e.g., Minn. Stat. § 62J.23, Subdiv. 1 ("The commissioner of health shall adopt rules restricting financial relationships or payment arrangements *involving health care providers under which a person benefits financially by referring a patient to another person*, recommending another person, or furnishing or recommending an item or service. The rules must be compatible with, and no less restrictive than, the federal Medicare antikickback statute[.]") (Emphasis added). Because the No-Fault Act authorizes companies like 411-Pain to advertise on behalf of providers who "direct" them, Subdivision 6(d)(1), rather than burdening speech, appears to allow arrangements that might otherwise be illegal under governing state law. See id.

Our reading of Subdivision 6(d)(1) supports the notion that the provision does not categorically prohibit 411-Pain from advertising under the Act. Further, as Defendants argued in district court: "It stands to reason that a health care provider who pays a third party for advertising services is directing that third party to advertise on their behalf, which is clearly allowed under part (1) of Subdivision 6(d)." 1-800-411-Pain, 915 F. Supp. 2d at 1055. We agree. If 411-Pain still does not believe it operates "at the direction of" the providers in its network, "[411-Pain] may presumably draft contractual language" explicitly warranting that the company advertises at a provider's direction for the purposes of Subdivision 6(d)(1). Id. We affirm the district court's judgment on this point.

-18-

D.  Applying Commercial Speech Disclosure Rules to Subdivisions 6(d)(2) and (3)

We next address Plaintiffs' challenges to the disclosure requirements in Subdivisions 6(d)(2) and (3).  Subdivision 6(d)(2) provides that people and entities that advertise under the No-Fault Act must "prominently display or reference the legal name of the health care provider."  Subdivision 6(d)(3) requires that advertisers "display or reference the license type of the health care provider, or in the case of a health care provider that is a business entity, the license type of all of the owners of the health care provider but need not include the names of the owners."  Plaintiffs allege that the disclosure requirements "amount to a complete prohibition on truthful, non-misleading advertising" because such requirements are "so unjustified and unduly burdensome" under Zauderer that they chill protected commercial speech.  See Zauderer, 471 U.S. at 651. ("We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech.").  Plaintiffs insist in their complaint that "[b]ecause of the number of providers in 411 Pain's network, it would be impossible for 411 Pain to identify all of the providers along with the professional-license information for each owner on its advertisements."  In the alternative, Plaintiffs contest the factual basis for characterizing 411-Pain's advertisements as misleading.  They argue that in the absence of actual proof of deception, Subdivisions 6(d)(2) and (3) should be reviewed under Sorrell and Central Hudson, *not* Zauderer.

i.  Facial or As-Applied Challenges to Subdivisions 6(d)(2) and (3)

As an initial matter, it is unclear from Plaintiffs' complaint whether they are bringing facial or as-applied challenges to the disclosure requirements.  When asked at oral argument, Plaintiffs' counsel represented that the challenges were facial.[12]  We

---

[12]But see Milavetz, 559 U.S. at 248–49 ("Although the nature of [the plaintiff's] challenge [to the disclosure requirements at issue] is not entirely clear from the briefing or decisions below, counsel for Milavetz *insisted at oral argument* that this is 'not a facial challenge; *it's an as-applied challenge*.'") (Emphasis added).

reject the argument that Subdivisions 6(d)(2) and (3) are so unduly burdensome and unjustified that in no conceivable instance would such provisions ever be constitutional. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Plaintiffs have not shown, as they must, that the disclosure requirements are unconstitutional in all cases. For example, consider that the provisions apply to "licensed health care providers," not just to referral companies. And if the requirements were applied to a single provider advertising under the Act, Subdivisions 6(d)(2) and (3) do not appear to unduly burden such a provider's ability to advertise. Nor do Plaintiffs attempt to show that the disclosure requirements are facially overbroad. See Milavetz, 559 U.S. at 259 n.2 (Thomas, J., concurring) (agreeing with majority that the disclosure requirements in the Bankruptcy Abuse and Consumer Protection Act of 2005 were facially constitutional because, among other things, the plaintiffs did not challenge the statute's overbreadth). Accordingly, we reject any facial challenges to the disclosure requirements at issue in this case.

ii. Whether Sorrell and Central Hudson or Zauderer Applies to Subdivisions 6(d)(2) and (3)

To the extent Plaintiffs bring as-applied challenges to Subdivisions 6(d)(2) and (3), we are not persuaded on the record before us that the requirements create unconstitutional burdens on 411-Pain's commercial speech. As the Supreme Court explained in Milavetz, if challenged disclosure requirements are "directed at *misleading* commercial speech," 559 U.S. at 249, and if they "impose a disclosure requirement rather than an affirmative limitation on speech, . . . the less exacting scrutiny described in Zauderer governs" a court's review of the disclosure rules, id.; see also R.J. Reynolds Tobacco Co. v. FDA, 696 F.3d 1205, 1212 (D.C. Cir. 2012) (characterizing Zauderer's standard as "akin to rational-basis review"). In their brief, Plaintiffs agree with Defendants that the State of Minnesota has a substantial interest in protecting the public from misleading and false advertising aimed at persons injured

in automobile accidents. See Zauderer, 471 U.S. at 651 (concluding that "the State's interest in preventing deception of consumers" is sufficient to trigger more deferential judicial scrutiny toward disclosure requirements). However, Plaintiffs dispute the factual basis for characterizing 411-Pain's advertisements as misleading. Plaintiffs cite Ibanez v. Florida Department of Business & Professional Regulations, 512 U.S. 136 (1994), for the proposition that the Zauderer disclosure standard of review only applies when the government makes a sufficient showing that an advertisement actually misleads consumers. Plaintiffs argue that absent proof of actual deception, the more exacting Central Hudson commercial speech test should apply to review Subdivisions 6(d)(2) and (3).

In Ibanez, a Florida state regulator of accountancy argued, among other things, that an attorney's use of the designation "Certified Financial Planner" was "potentially misleading" and that therefore the regulator could require a disclaimer to accompany the attorney's use of the designation. Id. at 146. The Court disagreed, concluding that the regulator could not "point to any harm that is potentially real, not purely hypothetical." Id.; see also id. at 148 ("We have never sustained restrictions on *constitutionally protected speech* based on a record so bare as the one on which the Board relies here.") (Emphasis added). But see In re R.M.J., 455 U.S. at 203 ("Misleading advertising may be prohibited entirely."). In other words, because the Court found the speech only "potentially" and not "inherently" misleading, the Court held that the state regulator must produce evidence of the potential for the designation to mislead before the regulator could require a disclaimer to accompany it. Ibanez, 512 U.S. at 146–49. The reason the Court in Ibanez demanded evidence once it determined the speech was not "inherently misleading" was because otherwise a state could simply declare certain speech deceptive in order to prohibit it. See id. at 146 ("[W]e cannot allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to 'demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'" (quoting Edenfield v. Fane, 507 U.S. 761, 771 (1993))).

In contrast, in <u>Zauderer</u>, the Court did not require proof of actual deception for an advertisement that was misleading on its face. There, the Court considered an attorney advertising rule that required attorneys who advertised contingent-fee arrangements to disclose that a losing client—while not obligated to pay legal services fees—may still be on the hook for various costs associated with litigation. <u>Zauderer</u>, 471 U.S. at 651; <u>see</u> <u>id.</u> at 652 (noting that the attorney's advertisement promised "if there is no recovery, no legal fees are owed by our clients" without disclosing potential litigation costs). Significantly, the Court demanded no evidence that the advertisements would be misleading "[w]hen the possibility of deception is as self-evident as it is in this case[.]" <u>Id.</u> at 652. Similarly, in <u>Milavetz</u>, the Court held that a law firm's advertisements promising "debt relief" were "inherently misleading"—without proof of actual deception—where the ads conjured "the promise of debt relief without any reference to the possibility of filing for bankruptcy, which has inherent costs." <u>Milavetz</u>, 559 U.S. at 250. After concluding that the ads were misleading on their face, the <u>Milavetz</u> Court analyzed the disclosure requirements under <u>Zauderer</u>. <u>Id.</u> at 249.

As in <u>Zauderer</u> and <u>Milavetz</u>, we view 411-Pain's advertisements as inherently misleading on their face without requiring proof of actual deception. <u>See</u> <u>In re R.M.J.</u>, 455 U.S. at 203 (reasoning that the "inherently misleading" character of speech may be inferred from the "particular content or method of the advertising"). The ads fail to inform consumers of the nature of 411-Pain's business as a referral service, and they omit the fact that the No-Fault Act is only one of many sources of recovery an accident victim may pursue. Indeed, the ads never mention the No-Fault Act at all. As such, "we need not require the State to conduct a survey of the public before it may determine that the advertisement had a tendency to mislead." <u>Zauderer</u>, 471 U.S. at 652–53 (internal quotation and alteration marks omitted). We thus hold that the <u>Zauderer</u> standard governs review of the disclosure requirements in this case.

iii.  Applying <u>Zauderer</u> to Subdivisions 6(d)(2) and (3)

Under <u>Zauderer</u>, we ask whether the No-Fault Act's disclosure requirements are "reasonably related to the State's interest in preventing deception of consumers," <u>Zauderer</u>, 471 U.S. at 651, and whether they are "unjustified or unduly burdensome" to the point that they "offend the First Amendment by chilling protected commercial speech," <u>id.</u>  On the record before us, we conclude that Subdivisions 6(d)(2) and (3) satisfy <u>Zauderer</u>.

Boiled down, Subdivisions 6(d)(2) and (3) require that 411-Pain "prominently display" the legal name of the health care providers in its network, as well as the providers' license types.  We conclude that such requirements are "reasonably related" to Minnesota's interest in protecting consumers from misleading information because, absent such disclosures, consumers know nothing about the type of care they may receive if they call 411-Pain.  Specifically, consumers have no idea that when they call 411-Pain immediately from the scene of an accident (as the ads suggest they do), 411-Pain puts them in touch—in some, if not all situations—with chiropractors, not physicians.  The disclosures thus serve an essential purpose by informing victims about the nature of the services offered by the providers with whom 411-Pain does business.  In addition, we note that 411-Pain's "constitutionally protected interest in *not* providing any particular factual information in [its] advertising is minimal."  <u>Id.</u>  Accordingly, Subdivisions 6(d)(2) and (3) are "reasonably related" to Minnesota's interest in preventing the dissemination of misleading information to car accident victims.

Further, we decline to hold that Subdivisions 6(d)(2) and (3) are "unduly burdensome" when the record contains no evidence of the number of providers in 411-Pain's network.  Plaintiffs insist in their complaint that "[b]ecause of the number of providers in 411 Pain's network, it would be impossible for 411 Pain to identify all of the providers along with the professional-license information for each owner on its

-23-

advertisements."  Plaintiffs in their appeal brief cite to Mr. Lewin's affidavit for the proposition that the company intends to "establish and build" its referral network, and therefore 411-Pain's business is threatened "if as its network grows, each and every provider's name and license type must be included in every advertisement."

These assertions might be true, but we refuse to credit them in the context of a preliminary injunction proceeding where the company has not produced its list of providers.  To decide whether the disclosure requirements are "unduly burdensome" when applied to 411-Pain, the record must contain more than allegations; it must contain facts demonstrating the undue burden such requirements have on the company's ability to advertise.  Accordingly, we affirm the district court's refusal to grant a preliminary injunction barring enforcement of Subdivisions 6(d)(2) and (3).

## III. Conclusion

For the above reasons, the judgment of the district court denying Plaintiffs' request for a preliminary injunction is affirmed.[13]

---

[13]Because of the manner in which we chose to resolve this case, we do not address the issue of whether the district court abused its discretion in taking *sua sponte* judicial notice of (a) the Minnesota legislature's debate preceding the vote on the amendments to the No-Fault Act; and (b) a settlement between 411-Pain and Florida's Attorney General in state litigation brought pursuant to Florida's Deceptive and Unfair Trade Practices Act.  However, on remand, we note that judicial notice is subject to Fed. R. Evid. 201(e), which states: "On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed.  If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."  In addition, "Caution must also be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules."  Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 797 (8th Cir. 2009).  Out of respect for the adversarial process, the district court should allow the parties to build the factual record themselves as much as possible and are entitled to be heard on the propriety of the court noticing facts "not tested in the crucible" of litigation.  United States v. Hoyts Cinemas Corp., 380 F.3d 558, 570 (1st Cir. 2004).

APPENDIX

Advertisement 1:

TOURISTS JUST LOVE THE MALL AND TOURISTS BRING CAR ACCIDENTS ... THE ILLEGAL U–TURNS, I CAN DEAL WITH ... THE 15 MILES PER HOUR IN THE LEFT LANE, USED TO IT ... BUT THIS NEW ONE ... LEFT TURN RIGHT BLINKER HAS ME SCREAMING (SFX BEEP BEEP) ... HOPEFULLY YOU AVOIDED THE ACCIDENT, BUT IF NOT CALL GEORGE AT 1–800–411–PAIN ... ROAD RAGE IS NOT THE ANSWER ... GEORGE IS ... CAR ACCIDENT ... REMEMBER, AFTER 911, CALL 411 ... 1–800–411–PAIN ... YOU MAY BE ENTITLED TO FORTY THOUSAND DOLLARS IN INJURY AND LOST WAGE BENEFITS ... CALL 1–800–411–PAIN 24 HOURS A DAY 7 DAYS A WEEK ... WHETHER IT'S SATURDAY, SUNDAY, EVEN CHRISTMAS DAY ... UNLIKE TOURISTS ... 411–PAIN WORKS EVERYDAY ... CAR ACCIDENT ... REMEMBER AFTER 911, CALL 411 ... 1–800–411–PAIN ... YOU CAN CALL FROM HOME OR THE HOSPITAL, BUT THE ABSOLUTE BEST TIME TO CALL 411 PAIN IS FROM THE ACCIDENT SCENE ... REMEMBER AFTER 911, CALL 411, 1–800–411–PAIN ... 1–800–411–7–2–4–6.

Advertisement 2:

YOU'VE GOT A RETIREMENT PLAN, A BUSINESS PLAN, A WEDDING PLAN, AND PROBABLY EVEN DINNER PLANS ... BUT DO YOU HAVE AN [sic] CAR ACCIDENT PLAN ... CAR ACCIDENTS HAPPEN ... WHAT YOU PLAN TO DO NEXT CAN MAKE ALL THE DIFFERENCE ... CAR ACCIDENT ... REMEMBER AFTER 911 ... CALL 411 ... 1–800–411–PAIN ... 1–800–411–PAIN KNOWS ABOUT CAR ACCIDENTS ... IT'S WHAT THEY DO ... CALL 1–800–411–PAIN 24 HOURS A DAY 7 DAYS A WEEK FROM HOME, HOSPITAL OR ACCIDENT SCENE ... TIME OFF IS A CONCEPT 411 PAIN CAN'T GRASP ... CALL 1–800–411–PAIN AND LET THEM EXPLAIN THE UP TO $40,000 IN INJURY

AND LOST WAGE BENEFITS YOU MAY BE ENTITLED TO ... PLAN NOW ... PROGRAM 1–800–411–PAIN INTO YOUR PHONE NUMBER UNDER "ACCIDENT" ... HERE'S ANOTHER GOOD PLAN ... DON'T DRINK AND DRIVE AND ALWAYS WEAR YOUR SEATBELT ... CAR ACCIDENT, REMEMBER, AFTER 911 CALL 411. 1–800–411–PAIN.

Advertisement 3:

You know the deal ...
Car accident ... 411 PAIN
Slip and Fall ... 411 PAIN
Work accident ... 411 PAIN
Motorcycle accident ... 1–800–411–PAIN. You can say it in your sleep.

Whether it's Saturday, Sunday or even Christmas Day. Call 1–800–411–PAIN. The best time to call 411 PAIN is from the accident scene. But you're going to be stressed, so grab your cell and punch in 1–800–411–PAIN. You want someone whose got your back ... Call 1–800–411–PAIN ... 411–PAIN has got your back. Call 1–800–411–PAIN 24 hours a day 7 days a week and let them explain the up to $40,000 injury benefits you may be entitled to ... It's Sunday 5 p.m., there is no way 411 PAIN will answer the phone, WRONG! 411 PAIN works weekends. In an accident, and the guy with the tie says "let's not get our insurance companies involved." No good deed goes unpunished ... always call 911 and always call 411. REMEMBER after 911 call 411, 1–800–411–PAIN.

Advertisement 4:

CAR ACCIDENTS HAPPEN ... TELLING EVERYONE ON FACEBOOK ISN'T SOLVING YOUR PROBLEMS ... CALLING 1–800–411–PAIN COULD ... YOU MAY BE ENTITLED TO UP TO $40,000 IN INJURY AND LOST WAGE BENEFITS ... THAT'S WHY AFTER 911 CALL 411 ... 1–800–411–PAIN ... CALL

-26-

411–PAIN DIRECTLY FROM THE ACCIDENT SCENE ... LISTEN, YOU CAN TWEET AND POST ABOUT THE CAR ACCIDENT LATER ... CAR ACCIDENT ... REMEMBER, AFTER 911, CALL 411. 1–800–411–PAIN.

_____