# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2611

_____

Missouri Broadcasters Association; Meyer Farms, Inc.; Uncle D's Sports Bar & Grill, L.L.C.; Zimmer Radio of Mid-MO, Inc.

*Plaintiffs - Appellees*

v.

Eric S. Schmitt, Attorney General of the State of Missouri, in his official capacity; Dorothy Taylor, Acting State Supervisor of the Division of Alcohol and Tobacco Control

*Defendants - Appellants*

------------------------------

National Beer Wholesalers Association

*Amicus on Behalf of Appellant(s)*

Washington Legal Foundation

*Amicus on Behalf of Appellee(s)*

Wine & Spirits Wholesalers of America, Inc.

*Amicus on Behalf of Appellant(s)*

Show-Me Institute

*Amicus on Behalf of Appellee(s)*

Missouri Beer Wholesalers Association

*Amicus on Behalf of Appellant(s)*

American Civil Liberties Union of Missouri

*Amicus on Behalf of Appellee(s)*

Missouri Craft Brewers Guild

*Amicus on Behalf of Appellant(s)*

The Freedom Center of Missouri

*Amicus on Behalf of Appellee(s)*

American Beverage Licensees

*Amicus on Behalf of Appellant(s)*

Cato Institute

*Amicus on Behalf of Appellee(s)*

————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

————————

Submitted: September 26, 2019
Filed: January 8, 2020

————————

Before KELLY, MELLOY, and STRAS, Circuit Judges.

————————

KELLY, Circuit Judge.

Missouri Broadcasters sued Missouri concerning a Missouri statute and two Missouri regulations that allegedly violate the First Amendment right to free speech.[1] After a bench trial, the district court[2] determined that the Missouri laws violated the First Amendment. Missouri appeals the district court's judgment.

## I. Background

Missouri has a three-tiered system to regulate the sale and distribution of alcohol within its borders. Mo. Rev. Stat. § 311.010–.950. It consists of (1) producers (e.g., distilleries, wineries, or breweries), (2) distributors or wholesalers, and (3) retailers (e.g., bars or liquor stores). Under a strict three-tiered system, producers are prohibited from distributing and retailing, distributors are prohibited from producing and retailing, and retailers are prohibited from producing and distributing. The laws that establish this system are commonly known as "tied-house" laws.[3]

---

[1]"Missouri Broadcasters" refer collectively to the appellees: a non-profit corporation promoting the interests and welfare of the broadcasting industry, a corporation operating radio stations, a winery, and a commercial food and drink establishment licensed to sell alcohol. "Missouri" refers collectively to appellants and named defendants in this case, the Missouri Supervisor of the Division of Alcohol and Tobacco Control and the Missouri Attorney General.

[2]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

[3]Pre-Prohibition, alcohol was distributed through a tied-house system in various states. Under a tied-house system, an alcohol producer would set up saloonkeepers and provide them with premises and equipment. In exchange, the saloonkeepers agreed to sell only that producer's products and to meet set sales requirements. Saloonkeepers often encouraged irresponsible drinking to meet those requirements. After the Twenty-first Amendment was enacted, many states adopted the three-tiered distribution model in part to preclude this system. Tenn. Wine and Spirits Retailers Ass'n v. Thomas, 139 S.Ct. 2449, 2463 n.7 (2019).

The stated purpose of Missouri's tied-house laws, formally known as its Liquor Control Law, is "to promote responsible consumption, combat illegal underage drinking, and achieve other important state policy goals such as maintaining an orderly marketplace composed of state-licensed alcohol producers, importers, distributors, and retailers." Id. § 311.015.

Section 311.070.1 (the Statute) of the Liquor Control Law provides, in relevant part:

> Distillers, wholesalers, winemakers, brewers or their employees, officers or agents shall not, except as provided in this section, directly or indirectly, have any financial interest in the retail business for sale of intoxicating liquors, and shall not, except as provided in this section, directly or indirectly, loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for liquors sold to such retail dealers.

Id. § 311.070.1. Missouri interprets the Statute as prohibiting producers and distributors[4] from retail advertising, because this type of advertising would qualify as a "financial interest in the retail business."

Subsection 311.070.4(10) provides an exception to the Statute's general prohibition on retail advertising by producers and distributors. Under this exception, a producer or distributor "may in an advertisement list the names and addresses of two or more unaffiliated retail businesses selling its product," but only if it excludes the retail price of the product in the advertisement, lists multiple retail businesses not

---

[4]We use the term "producers and distributors" to refer collectively to all manufacturers and distributors, including distillers, wholesalers, winemakers, and brewers.

affiliated with one another, and makes the list of retailers inconspicuous.[5] Id. § 311.070(4)(10). According to Missouri, this exception does not undermine its three-tiered system because any value to the retailer is "de minimis."

Missouri also enacted two regulations that prohibit certain types of advertisements. The first, the Discount Regulation, Mo. Code Regs. Rev. Tit. 11, § 70-2.240(5)(G), prohibits retailers from advertising discounted prices for "intoxicating liquor" outside of their establishments.[6] For example, this regulation

[5]Section 311.070.4(10) reads:

> The distiller, wholesaler, winemaker or brewer may in an advertisement list the names and addresses of two or more unaffiliated retail businesses selling its product if all of the following requirements are met:
> (a) The advertisement shall not contain the retail price of the product;
> (b) The listing of the retail businesses shall be the only reference to such retail businesses in the advertisement;
> (c) The listing of the retail businesses shall be relatively inconspicuous in relation to the advertisement as a whole; and
> (d) The advertisement shall not refer only to one retail business or only to a retail business controlled directly or indirectly by the same retail business.

[6]The Discount Regulation during the relevant time read:

> No advertisements of intoxicating liquor or nonintoxicating beer shall contain: . . . [a]ny statement offering any coupon, premium, prize, rebate, sales price below cost or discount as an inducement to purchase intoxicating liquor or nonintoxicating beer except, manufacturers of intoxicating liquor other than beer or wine shall be permitted to offer and advertise consumer cash rebate coupons and all manufacturers of intoxicating liquor may offer and

prohibits a retailer from taking out advertisements in a newspaper that say "$5 Margarita Mondays," "Buy One, Get One Free," "Half Price," or "Free Drinks for Ladies." Missouri interprets the regulation to permit advertisements that use a more generic description of a sale, such as "Happy Hour" or "Ladies Night." The Discount Regulation also allows advertising all sales, promotions, and discounts of any kind inside a retail establishment. The second regulation is the Below Cost Regulation, Mo. Code Regs. Rev. Tit. 11, § 70-2.240(5)(I), and it prohibits retailers from advertising prices below the retailers' actual cost (e.g., "penny pitchers" or "90-cent Bud Lights").[7] Retailers are, however, permitted to advertise below-cost alcohol inside their retail establishments. Neither regulation prohibits the sale of discounted or below-cost alcohol.

Missouri Broadcasters filed this action arguing that the Statute, as applied to advertisements by producers and distributors, and the Regulations, facially, violated their right to freedom of speech under the First Amendment. They further alleged that subsection 4(10) unconstitutionally compels speech. Missouri filed a motion to dismiss based on Fed. R. Civ. P. 12(b)(6), which the district court granted. This court reversed and remanded. Mo. Broads. Ass'n v. Lacy, 846 F.3d 295, 303 (8th Cir. 2017). On remand, the district court conducted a two-day bench trial and found that the Statute and the Regulations violated the First Amendment.

advertise coupons for nonalcoholic merchandise in accordance with section 311.355, RSMo.

Mo. Code Regs. Rev. Tit. 11, § 70-2.240(5)(G). The Discount Regulation was later amended to remove "nonintoxicating beer" but otherwise remains substantively the same. See Mo. Code Regs. Rev. Tit. 11, § 70-2.240(5)(G) (effective Sept. 30, 2019).

[7]During the relevant time, the Below Cost Regulation provided: "No advertisement of intoxicating liquor or nonintoxicating beer shall contain: . . . [a] price that is below the retailer's actual cost." Mo. Code Regs. Rev. Tit. 11, § 70-2.240(5)(I). Like the Discount Regulation, the Below Cost Regulation was later amended to remove "nonintoxicating beer." See Mo. Code Regs. Rev. Tit. 11, § 70-2.240(5)(I) (effective Sept. 30, 2019).

## II. Discussion

Missouri advances three arguments on appeal: (1) the Statute does not implicate the First Amendment; (2) even if the Statute implicates the First Amendment, it passes the Central Hudson test for commercial speech and subsection 4(10) does not compel speech; and (3) the Regulations are also constitutional under Central Hudson. Because the district court conducted a bench trial, we review the trial court's factual findings for clear error and its legal conclusions de novo. Richardson v. Sugg, 448 F.3d 1046, 1052 (8th Cir. 2006).

### A. The Statute

The First Amendment, which applies to state and local government through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." U.S. Const. amend. I; see also Passions Video, Inc. v. Nixon, 458 F.3d 837, 840 (8th Cir. 2006). The First Amendment "does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." Sorrell v. IMS Health Inc., 564 U.S. 552, 567 (2011). But a statute falls within the purview of the First Amendment if it "imposes a burden based on the content of speech and the identity of the speaker." Id.

Missouri argues the Statute implements a three-tiered system that regulates economic activity and, at most, only incidentally affects speech. In particular, Missouri notes the Statute does not mention speech and instead simply prohibits producers and distributors from retail advertising. Missouri further contends its three-tiered system comports with its authority under the Twenty-first Amendment.[8]

---

[8]As relevant here, section 2 of the Twenty-first Amendment states: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2.

Although the Statute on its face does not restrict speech, its practical operation restricts speech based on content and speaker identity. The Statute imposes content-based restrictions by limiting what producers and distributors can say in their advertisements. See id. at 564 (noting that marketing is "speech with a particular content"). Under the Statute, a producer or distributor may not have an advertisement that says, "Drink Coors Light, now available at Joe's Bar," because the advertisement mentions a retailer. The Statute also restricts speech based on speaker identity because it allows retailers—but not producers or distributors—to run certain advertisements. That is, Joe's Bar could run the ad, "Drink Coors Light, now available at Joe's Bar," but a producer or distributor could not. Missouri's economic motivation for the Statute does not insulate it from First Amendment challenges. Cf. id. at 567 ("While the burdened speech results from an economic motive, so too does a great deal of vital expression."). The Statute "imposes a burden based on the content of speech and the identity of the speaker" and thus implicates the First Amendment. See id.

Missouri's authority under the Twenty-first Amendment cannot save the Statute from its First Amendment implications. The Twenty-first Amendment allows states to regulate alcohol only if the regulations "do not . . . violate rights secured by the Constitution of the United States." Tenn. Wine and Spirits, 139 S.Ct. at 2464 (citing Mugler v. Kansas, 123 U.S. 623, 659 (1887)). The Supreme Court held in 44 Liquormart that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment." 44 Liquormart v. Rhode Island, 517 U.S. 484, 516 (1996). There, the Court struck down a Rhode Island law banning the advertisement of alcohol prices because such an advertising ban was "an abridgment of speech protected by the First Amendment" and was "not shielded from constitutional scrutiny by the Twenty-first Amendment." Id. at 489. Even the case Missouri relies on, Granholm v. Heald, 544 U.S. 460 (2005), reiterates the notion that the Twenty-first Amendment does not provide carte blanche for states to override other constitutional rights. In Granholm, the Court struck down a set of discriminatory direct-shipment laws that favored in-

state wineries over out-of-state competitors because it violated the Commerce Clause—despite Michigan and New York contending that the laws were necessary for their three-tiered systems. Id. at 489 ("The discrimination is contrary to the Commerce Clause and is not saved by the Twenty-first Amendment.").

Having concluded that the Statute as applied implicates the First Amendment, we must next decide whether the Statute violates the First Amendment. The parties agree that the Statute as applied concerns commercial speech, and the First Amendment "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 563 (1980). "However, commercial speech is still protected from unwarranted governmental regulation." 1-800-411-PAIN Referral Serv., LLC v. Otto, 744 F.3d 1045, 1054 (8th Cir. 2014) (cleaned up). Courts consider four prongs when determining whether a law unconstitutionally burdens commercial speech: (1) whether the commercial speech at issue concerns lawful activity and is not misleading; (2) whether the governmental interest is substantial; (3) whether the challenged law directly advances the government's asserted interest; and (4) whether the law is no more extensive than necessary to further the government's interest. Id. at 1055 (citing Cent. Hudson, 477 U.S. at 566). The parties agree that the Statute as applied meets the first prong, but they disagree on the remaining three prongs.

Missouri bears the burden of identifying a substantial interest that justifies the challenged restriction. Greater New Orleans Broad. Ass'n v. United States, 527 U.S. 173, 183 (1999). Missouri contends it has a substantial interest in preventing producers and distributors from unduly influencing retailers. Missouri Broadcasters assert that Missouri failed to identify "preventing undue influence" as a substantial interest at trial and cannot do so for the first time on appeal. But we read "undue influence" to be a subset of the state's expressed goal of ensuring an orderly marketplace. As the district court explained, Missouri's three-tiered system is "a measure to keep the manufacture and wholesale tiers from controlling or dominating

-9-

the retail tier." We need not wade into this debate any further, however, because the Statute still fails to meet the third and fourth prongs of Central Hudson.

To satisfy the third Central Hudson prong, Missouri must show that the Statute advances its substantial interest "in a direct and material way." Rubin v. Coors Brewing Co., 514 U.S. 476, 487 (1995) (quoting Edenfield v. Fane, 507 U.S. 761, 767 (1993)). This burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Id. (quoting Edenfield, 705 U.S. at 770–71). The Statute "may not be sustained if it provides only ineffective or remote support for the government's purpose." Cent. Hudson, 447 U.S. at 564. Instead, Missouri must show that the Statute "significantly reduces" the alleged harms. See 44 Liquormart, Inc., 517 U.S. at 506. This requirement is "critical; otherwise, 'a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.'" Greater New Orleans, 527 U.S. at 188 (quoting Rubin, 514 U.S. at 487).

Missouri fails to show how the Statute, as applied, alleviates to a significant degree the harm of undue influence. Missouri alleges that the Statute—as shown through "consensus and history"—advances its interest because the three-tiered system prevents undue influence of alcohol producers and distributors over retailers. Missouri's reliance on history is misplaced, because it discusses the history of other states and the purpose behind tied-house laws generally, but fails to include a discussion of Missouri's own history or of the Statute in particular. Missouri's reliance on "consensus" is equally unavailing. Missouri notes that nearly every state and the federal government have tied-house laws, so Missouri's tied-house laws must pass constitutional muster. But the fact that other states and the federal government have tied-house laws does not make Missouri's version constitutional—particularly when only sections of Missouri's tied-house law, as applied, are at issue in this case. Consensus and history, at best, speak to an arguable need for a three-tiered system

-10-

generally; they do not show how the Statute, as applied here, directly and materially advances Missouri's interest of preventing undue influence.[9]  Missouri has not demonstrated that the harm of undue influence is real or that the Statute alleviates this harm to a material degree.

Also important here is that the Statute's operation and attendant regulatory regime are "so pierced by exemptions and inconsistencies" that they render the Statute as applied irrational and ineffective.  Greater New Orleans, 527 U.S. at 190.  As Missouri interprets the Statute, a producer or distributor is not permitted to advertise the message, "Drink Coors Light, now available at Joe's Bar."  See Mo. Rev. Stat. § 311.070.1.  That producer or distributor could, however, give Joe's Bar a product display that advertises the exact same message, and Joe's Bar could use the product display however it wishes.  See Mo. Rev. Stat. § 311.070.4(1).  That producer or distributor could also give Joe's Bar banners, seasonal decorations, mirrors, coasters, cups, menus, and paper napkins advertising the same message.  See Mo. Rev. Stat. §§ 311.070.3, 311.070.4(2).  Section 311.070 lists several other advertising exemptions for the Statute.  See id. §§ 311.070.4(9) (permitting producers and distributors to give retailers items for advertisement use), 311.070.4(10),[10] 311.070.4(15) (allowing producers and distributors to provide permanent advertising signs to retailers).  A statutory framework with such  advertising exemptions and inconsistencies renders the Statute as applied ineffective in preventing undue influence "in a direct and material way."  See Rubin, 514 U.S. at 487.

[9]To the extent that Missouri argues producer and distributor advertising is the undue influence that leads to increased alcohol consumption, Missouri Broadcasters presented undisputed evidence showing that alcohol consumption actually decreased by 15% while overall alcohol advertising expenditures increased by approximately 400% over the last 30 years.

[10]Because we find that the Statute as applied violates the First Amendment, we need not address Missouri Broadcasters' argument regarding the Statute's exception, subsection 4(10).

Finally, Missouri has also failed to prove that the Statute's speech restriction as applied is not more extensive than necessary to serve its interest, as required by the fourth Central Hudson prong. Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323 F.3d 649, 658 (8th Cir. 2003). Missouri is not required to employ the least restrictive means conceivable, "but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest—'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" Greater New Orleans, 527 U.S. at 188 (quoting Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989)). The Statute should indicate that Missouri "carefully calculated the costs and benefits associated with the burden on speech." Id. (cleaned up). "[I]f there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417 n.13 (1993).

Missouri provides no evidence that the Statute as applied is not more extensive than necessary to further its alleged interest of preventing undue influence. Instead, Missouri argues that the Statute does not target speech at all, but instead "preserves all avenues of speech" and simply "regulates what activities licensed manufacturers and distributors can engage in with a retail licensee." But this argument goes to whether the Statute implicates speech, not whether the Statute is narrowly tailored to further its interest. Without more, Missouri does not meet its burden for Central Hudson's fourth prong. Further, as the district court observed, there are several non-speech-restrictive alternatives that may advance Missouri's stated interest, including policing rather than banning inter-tier advertising arrangements, restoring the three-tier separation by removing other exceptions that do not affect free speech, monitoring wholesale and producer advertising and any cooperative advertising payments through a self-reporting system, or limiting non-advertising related financial incentives and assistance that could be provided to retailers. Missouri contends these alternatives are infeasible for a variety of reasons. But it remains Missouri's burden to establish that

the current Statute is narrowly tailored to its interest—and it has not satisfied this burden.

## B. The Regulations

Missouri concedes its Regulations facially restrict truthful, non-misleading commercial speech but maintains they pass <u>Central Hudson</u>. On appeal, Missouri argues that the district court misunderstood its interest as decreasing "overall" consumption when its actual substantial interests are to reduce overconsumption and underage drinking. It contends that the Regulations advance these interests because they "reduce consumption of one specific kind of alcohol: alcohol sold below cost or at discount," which is the kind more likely to cause overconsumption and underage drinking. On appeal, as at trial, Missouri Broadcasters agree that reducing overconsumption and underage drinking are substantial interests but contend that Missouri's Regulations fail the third and fourth <u>Central Hudson</u> prongs.

As an initial matter, contrary to Missouri's assertion otherwise, the district court correctly understood the state's asserted interests. The district court specifically noted that "the State must show that prohibiting advertising of discount prices and below-cost alcohol directly reduces overconsumption of alcohol and underage drinking"—the same two interests Missouri asserts on appeal. The court ultimately concluded that the Regulations did not advance either interest and were more extensive than necessary.

Like the Statute, Missouri's Regulations fail to meet <u>Central Hudson</u>'s third and fourth prongs. As to the third prong, we agree with the district court that "the State offered no empirical or statistical evidence, study, or expert opinion demonstrating how these regulations further protected the State's interest."[11] Notably, Missouri "did

---

[11]Missouri relies on a 2003 study indicating that areas with "more exterior advertising of alcohol promotions had higher binge-drinking rates." But this study was not admitted as evidence during trial. Further, it only addressed advertising

-13-

not present any evidence showing overconsumption or underage drinking is less frequent in Missouri than in states without similar advertising restrictions." Nor did it produce evidence that the rate of overconsumption or underage drinking decreased when the Regulations were adopted in Missouri. Missouri also fails to show that the Regulations are no more extensive than necessary to further its interest in decreasing discounted or below-cost alcohol consumption. As the district court identified, Missouri might lower overconsumption and underage drinking by increasing its alcohol tax, promoting educational programs, banning sales of discounted or below-cost alcohol, or enforcing penalties. These non-speech-restrictive alternatives further indicate that the Regulations are more extensive than necessary to further Missouri's interest.

We affirm the district court's judgment and deny Missouri Broadcasters' motion to strike and motion to file supplemental memo in support of the motion to strike.

STRAS, Circuit Judge, concurring.

I join the court's opinion because I agree that Missouri's tied-house statute fails the *Central Hudson* test. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980); *1–800–411–Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1055 (8th Cir. 2014) (explaining that *Central Hudson* applies to restrictions on commercial speech). But I cannot help but wonder whether we should be applying a different standard. After all, *Central Hudson* fits best when a law limits commercial speech, *see Cent. Hudson*, 447 U.S. at 571–72, not when it does something more.

---

inside retail establishments—which is not restricted by the Regulations—and advertising on windows of establishments, which is only a small part of the Regulations' exterior advertising ban.

-14-

Missouri's tied-house statute does more than just limit speech. To be sure, as Missouri has interpreted it, the statute forbids manufacturers from mentioning retailers in their advertisements. Mo. Rev. Stat. § 311.070.1. But this general prohibition does not apply if manufacturers: (1) list *more than one*, (2) make the listing of retailers "inconspicuous," and (3) do not advertise prices. Mo. Rev. Stat. § 311.070.4(10). Together, these two provisions *compel* associational speech by treating a manufacturer's "choice to talk about one [of its retailers] as a trigger for compelling [it] to talk about" another. *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 753 (8th Cir. 2019). In these circumstances, a stricter standard should—and arguably does—apply.

*Janus* suggests as much. *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464–65 (2018). There, the Supreme Court explained that exacting scrutiny—not *Central Hudson*—applies if a law requires the bankrolling of someone else's commercial speech. *See id.* at 2465 (noting that this standard requires "a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms" (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 310 (2012))). Yet even exacting scrutiny might not be exacting enough for Missouri's statute, which forces manufacturers to alter their *own* message. *Cf. Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 470–71 (1997) (reasoning that true compelled speech can be even more insidious than compelled funding of speech); *Telescope Media Grp.*, 936 F.3d at 751–54 (applying strict scrutiny to a law that compelled for-profit, non-commercial speech). In an appropriate case, if the issue were briefed, I would be open to deciding whether *Central Hudson* is actually the right fit for cases like this one.

---

-15-